## CHISHOLM *v.* CISSELL.

### NOTICE; CONTRACTS.

1. A party charged with constructive notice of the contents of a recorded instrument is bound only by what is contained in the record and is not required to go outside of the record to determine whether the rights of the parties to the instrument are greater or less than those expressed in the instrument itself.
2. Where a recorded instrument seeks to charge the "shares" of the obligors in a decedent's estate with a lien for the payment of a promissory note given by them, the word "shares" will not be held to include the interest which the obligors have as creditors of the estate, at least where the rights of third parties have intervened.

NO. 787. Submitted June 14, 1898. Decided June 21, 1898.

HEARING on an appeal by the defendants from a decree for the complainant in a suit to enforce an alleged lien under a writing obligatory against real estate in the hands of third persons. *Reversed.*

The COURT in its opinion stated the case as follows:

Prior to June 6, 1890, the estate of Joseph H. Crown, who had died on March 26, 1890, was indebted to the appellee, George W. Cissell, as surviving member of a firm of Herr & Cissell, on a promissory note for $1,000, with some accrued interest. On the day first mentioned Cissell released his claim against Crown's estate, or rather purported to sell it to Mary F. Crown, the widow of the deceased, and to Joseph H. Crown, junior, a son of the deceased, Joseph H. Crown, who gave him their own joint and several note for $1,080.78 in place of it, bearing date on that day, and payable from time to time in instalments, no specific amount being mentioned for any instalment, within the period of three years thereafter, with interest at the rate of six per centum per annum until paid. This note was drawn in the shape of a writing obligatory, under seal; and the concluding part of it ran as follows:

"And we, the said Mary F. Crown and Joseph H. Crown, hereby covenant that this note shall bind and become a lien upon our individual and respective shares in the estate, real and personal, of the said Joseph H. Crown, deceased, from the date hereof until the said notes shall be fully paid and satisfied."

The instrument was acknowledged by the obligors before a notary public on the day of its date; and was recorded among the land records of the District of Columbia on March 13, 1891, in pursuance of the provisions of Section 449 of the Revised Statutes of the United States for the District of Columbia, which authorizes such record of any written contract in relation to land that has been duly acknowledged.

On November 2, 1891, the obligors in this instrument, together with a daughter of the deceased, Joseph H. Crown, filed a bill in equity against the five other children of the said deceased, all of whom were minors, and against the

trustee and beneficiary under a certain deed of trust, to pro-
cure the sale, under the order of the court, of a certain
piece of real estate which Joseph H. Crown, deceased, had
owned in his lifetime, upon which, with the concurrence of
his wife, Mary F. Crown, he had placed the deed of trust in
question, and which, it seems, was the only real estate of
which he died seized and possessed. The purpose of the
proceeding was twofold: (1) To establish a claim of the
widow, Mary F. Crown, as a creditor of her husband's es-
tate to the amount of $2,000, being part of a larger claim
for which she had, some years before, a deed of trust upon
the same real estate, but which she had relinquished and
released in order to enable her husband to give a first mort-
gage or deed of trust thereon to a building association, to
which reference is made in the record, with the understanding,
however, between her and him, never perfected, that she
should have a second lien or deed of trust upon the prem-
ises, in consideration of which she now claimed an equitable
lien; and, (2) To have partition of the property between
the heirs by means of a sale, Joseph H. Crown having died
intestate, and the property being incapable of specific par-
tition.

It was alleged in the bill of complaint that the personal
estate left by Joseph H. Crown did not equal the amount of
his debts at the time of his death, and which had been
proven against his estate; but that all the claims against
the estate had been arranged or paid, excepting the claim
just mentioned of the widow, Mary F. Crown, as a creditor.
She made no claim of any dower interest, inasmuch as the
deed of trust to the building association was still a subsist-
ing incumbrance on the property, and the interest of the
deceased, Joseph H. Crown, was only an equity of redemption,
to which dower was not then incident.

After due proceedings had, a decree was rendered for the
sale of the real estate, and a trustee was appointed to sell.
He sold and conveyed to Delbert H. Decker and Charles F.

Chisholm, the appellants in the suit now before us, for the sum of $6,090; and the sale was ratified and confirmed by the court, and a reference was made to the auditor of the court to state the trustee's account and the proper distribution of the fund in his hands. The auditor reported the sum of $2,790.83 as due to the building association, the sum of $2,202.75 as due to the widow, Mary F. Crown, on account of her claim as a creditor of the estate, and of her equitable lien therefor, and the sum of $811.72 to be distributable in equal shares between the seven children, which gave Joseph H. Crown, junior, $115.96. Part of the claim of the widow, Mary F. Crown, a little upwards of $1,650, had been assigned, it seems, to one Thomas T. Keane; and he was allowed it by the auditor, who awarded the residue, amounting to $546.20, to Mary F. Crown. This amount, it seems, she received.

The auditor's report was ratified by the court; but there were some small allowances made which ultimately reduced the distributive shares of the children to less than $70 each. The report was filed on November 28, 1893; and it was ratified on February 15, 1894. This ended the proceedings, except as to a collateral matter not here important to be mentioned.

George W. Cissell, the appellee in this case, was not a party to those proceedings, and claims to have had no notice or knowledge of them.

More than two years after the distribution of the proceeds of sale under the proceedings that have been detailed, and about five years apparently after the settlement of the personal estate of the deceased, Joseph H. Crown, the appellee, George W. Cissell, filed the bill in equity in the present case against Charles F. Chisholm and Delbert H. Decker, the purchasers in the preceding suit, and against Mary F. Crown and Joseph H. Crown, junior, to enforce his alleged lien against the property under the writing obligatory executed by the two latter on June 6, 1890. Joseph H. Crown

permitted the bill to be taken *pro confesso* against him; Mary F. Crown left the matter to the court upon questions of law; and Decker and Chisholm denied the lien. Chisholm, however, preferring not to contest the matter in respect of the liability of Joseph H. Crown, made a tender of $80 to Cissell, in satisfaction of his claim, which was refused.

The depositions taken tended to show, on the part of Cissell, that he knew nothing of the pendency of the equity suit in which the real estate had been sold to Chisholm and Decker; and on the part of the defendants in the cause, that after this suit had been begun, Cissell told Chisholm that he (Cissell) had no claim against the estate of the deceased, Joseph H. Crown, and that he had no claim against Decker and Chisholm, and did not know why the suit had been brought, but that he had placed his claim in the hands of his attorney for collection.

On final hearing, the Supreme Court of the District of Columbia rendered a decree giving the complainant, Cissell, an equitable lien upon the real estate in question for the amount of the obligation of June 6, 1890, and interest, and providing for a sale of the whole property for the payment thereof, unless such sum should be paid to Cissell within thirty days.

From this decree Chisholm and Decker have appealed to this court.

*Mr. A. S. Worthington* and *Mr. Charles F. Chisholm* for the appellants.

*Mr. W. A. Johnston* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

From the foregoing statement of the case, it is very evident that the determination of the controversy between the parties depends mainly upon the construction to be given to the paper of June 6, 1890, executed by Mary F. Crown and Joseph H. Crown, the younger.

The provisions of that paper, under the circumstances, are somewhat absurd and inconsistent. The estate of Joseph H. Crown, deceased, was in process of settlement. The appellee Cissell, had proved his claim against it in the Orphans' Court; and thereupon, inspired no doubt by motives of benevolence and kind consideration, relinquished that claim to the widow and one of the sons of the deceased and took their individual obligation in place of it. While that obligation purported in terms to be made a lien upon the individual and respective interests or shares of the obligors in the estate, real and personal, of the deceased, it is not apparent how that lien could be given effect, so far as the personalty was concerned, since the obligation was made to extend over three years, and the shares of the obligors in the personalty were to be determined, and were, in fact, determined, at the end of the year of administration. The parties in interest would then become entitled to have the shares paid over; and yet the obligee in the paper of June 6, 1890, would not then become entitled to have his claim paid in full. The fact that the personalty, as it seems, was exhausted in the payment of debts, and that there were no shares to be distributed among the obligors who made that paper, does not change the inconsistent character of the paper itself, in attempting to give a lien and to hold the fund beyond the time when the fund was payable to the parties in interest and when the lien would become impracticable.

But we may assume, as the testimony would indicate, that the obligee Cissell really looked to the sale of the real estate for the satisfaction of his claim. And here the same inconsistency appears. The property was liable to be sold at any time for the payment of debts. The proceeding under which it was actually sold and under which the appellants purchased, was in part a proceeding for the payment of debts, and in part a suit for sale for the purpose of partition; and yet the paper in question would have operated to postpone these for three years. But these are minor considerations, the only

tendency of which is to show that Cissell relied rather upon the personal integrity and the individual promises of the obligors in the paper than upon any claim or right of lien.

Assuming, however, that there was a valid and effective lien given by the paper of June 6, 1890, upon the individual and respective shares of the obligors therein in the estate of Joseph H. Crown, deceased, and that the appellants were charged by the record with due notice thereof, although the notice was constructive and not actual, the question arises, which is the important question in the case, as to the extent of that lien and of the rights and interests affected by it.

The proceeding is one to charge third parties, under a claim of constructive notice, with liability for equities subsisting between the complainant in the suit and two of the persons interested in the estate of Joseph H. Crown. Now, it may well be, that in a proceeding between Cissell and those two persons for the enforcement of his equitable rights as claimed by him, a court of equity might go to very great lengths in his favor, might even reform his contract, if it needed reformation, in order to give effect to the true intention of the parties to it, and might take hold of any interest of any kind that the two indebted parties had in the estate of the deceased, Joseph H. Crown. But it is a most erroneous assumption to suppose that what would be proper between the immedate parties would be equally proper as between them, or any of them, and third parties. Such an assumption, of course, is not in accordance with law, or with the essential principles of justice; and it does not diminish the unsoundness of the proposition to say that such third parties are affected with notice. Of what did the record in the present case give notice to the appellants? Very plainly, only of the fact that the distributive shares of the obligors in the writing were subject to a lien in favor of the appellee—not of any other equity or right. And it is no answer to this to say that, if the appellants had made inquiry, they might

13 Ct. App.—15

have ascertained all the circumstances and fully guarded themselves against loss. They were bound to take notice of what was contained in the record; but they were not bound to go outside of that record. There are cases, of course, where parties put upon inquiry are required to make that inquiry thorough and complete, and are chargeable with all which they might have discovered upon due and proper investigation. But we are unable to see how this rule can apply to a paper on record, complete in itself and constituting in itself all of which the party charged can be required to take notice. Such party can not in reason be held to inquire whether the parties to the paper meant what they said, or something else; or whether there was not something else behind which they did not discover to the world. The law makes it the imperative duty of parties who seek by record instruments to affect the rights of third parties, to make such record instruments clear and distinct expressions of their agreements. It will not allow them, when the rights of third persons have intervened, to come in and say that they meant something different. As between themselves, their true intention may be given effect, however imperfectly or erroneously reduced to writing; as between themselves and third parties, their intention is to be deduced exclusively from the instruments themselves.

The appellants, then, had notice that Mary F. Crown and Joseph H. Crown, junior, had pledged their shares of the estate of Joseph H. Crown, deceased, by giving a lien thereon to the appellee. It has been developed that Mary F. Crown was entitled to no share whatever in that estate, and that the share of Joseph H. Crown, junior, amounts to less than $70. Thereupon it is claimed on behalf of the appellee that the parties to the paper did not mean merely to pledge the shares of the estate to which they were, or supposed themselves to be, entitled, but any and all interests which they had, either as widow and heir, or as distributees, or as creditors, or otherwise. But there is no proof what-

ever that such was the intention of the parties.    There is no proof that the appellee knew of the claim of Mary F. Crown as a creditor of her husband's estate, or that any such claim was in his mind when the paper of June 6, 1890, was executed.    And even if there were such proof, clear and convincing beyond doubt, it would not avail the appellee, if its effect were to change or modify the contract of which the record imported notice.

The argument on behalf of the appellee, therefore, is compelled to be rested upon the theory of giving a forced, unnatural, and unusual meaning to the word " *shares*" used in the writing of June 6, 1890.    The ordinary significance of that term is not doubtful.    It is, in this connection, taken to mean the part or portion of the estate of a deceased person allotted by law by the way of dower, or to the heirs-at-law under the statute to direct descents, or, in the case of personalty, to the next of kin under the statute of distributions. Or, but somewhat improperly, however, the term is sometimes used to designate such portions of an estate as have been left by a testator by a will.    But it has never yet been heard of in any adjudicated case, and it is not in accordance with common acceptance or common understanding, that the term should be taken to mean or to include the right of a creditor against the estate of a deceased person. Such a right is not in any proper sense of the word a *share* in the estate; it is at the utmost merely a right to charge the estate through the intervention of a court of equity.

As we have said, if this were a proceeding between the appellee and Mary F. Crown, there might be possible room for a different interpretation, upon satisfactory proof that the parties intended a different interpretation, or used the word in a different sense, as there might be room for correction, reformation, cancellation, or rescission.    But this is not such a proceeding.    The rights of third persons have intervened.    As to such rights, we may not go beyond the record as it stands.    We may not correct that record, if

correction were otherwise proper. Third parties here are chargeable with notice, but with notice only of what the record contains, not with notice of what might under other circumstances be imported into the record, or of what might possibly have been discovered if investigation had been extended at large outside of the record. No investigation outside of the record was needed to develop the fact that Mary F. Crown was a creditor of the estate of Joseph H. Crown, deceased; for that fact was amply developed in the proceedings under which the appellants purchased, and the sale in fact was had in the main to satisfy her claim. The only possible discovery, by which the rights of the appellants might be affected, would be of the fact, if such were the fact, of which, as we have intimated, there is no proof whatever, that the parties to the paper of June 6, 1890, used the word "shares" in a different sense from the ordinary meaning, and intended to include in that term any and all rights which they might have had as creditors of the estate of Joseph H. Crown, deceased.

But plainly the appellants were under no obligation to inquire what the parties meant by the terms which they used, when those terms were clear and unambiguous and had a well defined meaning both in law and in common acceptation. Nor is it certain that the parties would have agreed as to what they had intended. From the circumstances to which we have heretofore adverted, it may be questioned whether they had themselves any definite idea of what they intended; and this is all the greater reason why, as to third persons, not privy in estate or right with them, they should now be held to the ordinary significance of what they actually said and did, and put upon record as their solemn act and covenant.

The claim of Mary F. Crown against the estate of her deceased husband, it may further be remarked, was in the shape of a promissory note. The claim was assignable in any event; as a piece of negotiable paper, it had even

greater elements of transferability than an ordinary claim. The legitimate result of the argument of counsel for the appellee is, that this claim or note could not have been negotiated, assigned, or transferred, except in subjection to the alleged lien of the paper-writing of June 6, 1890, which does not in the remotest way give notice of its existence; and this deduction is sufficient in itself to discredit the argument.

It is our conclusion that the paper-writing in question did not purport to give, and did not have the legal effect of giving, to the appellee Cissell, as against the appellants in this cause, a lien upon the interest of the defendant, Mary F. Crown, as a creditor of the estate of her deceased husband, so far as to charge the real estate in the hands of the appellants with the amount of the appellee's claim as an equitable lien. The lien declared was only such as could affect her right as the widow of the deceased; and inasmuch as she took nothing as widow, either in the realty or the personalty, there was nothing upon which the lien could attach, and it proved to be wholly inoperative.

It follows that the decree of the Supreme Court of the District of Columbia, rendered in this cause, must be reversed, with costs. But inasmuch as there is, or seems to be, a small balance of about $70 or $80 due to Joseph H. Crown, the younger, who has been made a defendant in the cause, out of the proceeds of sale, and which balance seems to be justly applicable to the claim of the appellee; and inasmuch as the appellants, or one of them, in respect of this balance, has made a tender to the appellee of the sum of $80, it seems proper that this amount should in some way be secured or paid to the appellee. The cause, therefore, will be remanded to the Supreme Court of the District of Columbia, with directions to vacate its decree and to enter a decree therein in accordance with this opinion, and with such provision therein in respect of said balance as may be right and proper. *And it is so ordered.*

It may be added that, although the CHIEF JUSTICE did not sit in this case, the record and briefs were submitted to him, and he fully concurs in the conclusion reached.